IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

EARLENE BOUCHARD,

Plaintiff,

V. CIVIL ACTION NO. 3:06-0564

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

**MEMORANDUM ORDER**

In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on August 11, 2003, alleging disability as a consequence of low back injury, degenerative disc disease, carpal tunnel syndrome, depression, anxiety and chronic pain. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-four years of age and had obtained a high school equivalent education (GED). Her past relevant employment experience

consisted of work as telemarketer, printing company laborer, and bartender. In his decision, the administrative law judge concluded that plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left knee, depressive disorder, and alcohol dependence, impairments which he found severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the Medical-Vocational Guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that the evidence, though conflicting, provides substantial support for the Commissioner's decision. Plaintiff's medical history is significant for treatment of neck pain and carpal tunnel syndrome beginning in 1998. Plaintiff reported improvement with physical therapy. In 2000 she developed low back pain after lifting at work. Dr. Weinsweig determined surgery was not indicated and noted plaintiff did not desire to have it in any event. She returned to work at a lighter job which she kept until February 2002 when she had a motor vehicle accident which exacerbated the back and neck pain. Thereafter, she was terminated from employment for excessive absenteeism. Plaintiff received chiropractic treatment, which she testified was beneficial, and was prescribed medication by Dr. Kilkenny at Wayne Health Services, although she stated it was not helpful. X-rays and MRI studies have been interpreted as consistent with degenerative changes in both the cervical and lumbar spine with some narrowing of the spinal canal

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2.

in the cervical area as a result. Plaintiff had surgery on the left knee on January 22, 2004 for repair of a torn meniscus. She also began treatment at the Prestera Center in May 2003 after incurring her third DUI the previous year. She received therapy and medication for alcohol abuse/dependence and a depressive disorder.

The administrative law judge, in determining residual functional capacity, relied on assessments from the state agency medical advisors and found plaintiff limited to light level work requiring no climbing of ladders, ropes or scaffolds, only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and no exposure to hazards or extreme heat or cold. He also found moderate limitation in a number of areas pertaining to mental functioning.[3]

Plaintiff raises two arguments on appeal. First, she contends that the administrative law judge erred because he did not adopt opinions expressed by Dr. Apgar, who performed a consultative evaluation for the Commissioner on October 24, 2003, and Dr. Kilkenny, her treating physician. Following his examination, Dr. Apgar concluded plaintiff "may" have "some" difficulty with standing, walking, or handling objects with the dominant hand and "may" have "marked" difficulty with sitting, lifting, carrying, pushing, pulling and traveling.

The administrative law judge considered Dr. Apgar's opinion and indicated he gave it "appropriate," but not controlling, weight. In support of this finding, he noted the overall record indicated plaintiff could meet the standing, walking and sitting requirements of light work; that Dr. Apgar did not define what he meant by "marked"; and his physical exam did not reveal significant abnormalities anywhere but the lumbar and cervical spine where there was limitation of motion. He

[3] Plaintiff did not raise any objection to the administrative law judge's findings relative to her mental impairments and thus the Court finds it unnecessary to discuss them.

pointed out that plaintiff was able to walk without using an assistive device, despite having a limp, and that Dr. Apgar commented she had no mechanical or breathing limitations secondary to obesity and no apparent joint abnormalities.

The Court finds the administrative law judge's reasoning thorough and persuasive. As noted, Dr. Apgar's opinion is vague in that he does not state the nature and degree of the limitations he thinks may be present. "Some" and "marked" are not very descriptive of what the limitations are or how they "may" affect plaintiff. More importantly, even assuming that "marked" would be so severe as to be disabling, neither Dr. Apgar's exam findings nor the remainder of the evidence support such a conclusion. As the administrative law judge noted, he did not detect restriction in the use of either hand or in sensation, reflexes or ability to walk or sit, and only mild reduction in strength. No other treating or examining source documented such limitations either.

During his exam on July 15, 2003, just three months prior to Dr. Apgar's, Dr. Weinsweig, a neurosurgeon, observed a normal gait and ability to walk in tandem, intact sensation, equal reflexes and "strong" motor strength. Though acknowledging plaintiff had chronic pain, he noted her desire not to have surgery and did not feel it would help her as much as she would have liked. She agreed she would continue "on the course that she is on." Though Dr. Weinsweig indicated he would see her back as needed and would be happy to further treat carpal tunnel symptoms in the future, she did not return to him.

Similarly, in follow-up from knee surgery, Dr. Tao did not place restrictions on plaintiff but did offer to give her an injection in the knee when she returned to see him in April 2004. There is no indication plaintiff availed herself of any further treatment from this physician which suggests that any residual discomfort she experienced following knee surgery either resolved or was bearable.

Finally, by reducing plaintiff's residual functional capacity to a limited range of light level work, the administrative law judge did take account of Dr. Apgar's opinion. By definition, light work requires sitting no more than one-quarter of a day[4] and lifting and carrying restricted to only twenty pounds occasionally and ten pounds frequently.[5] While Dr. Franyutti, one of the state agency medical advisors, indicated his agreement with Dr. Apgar's limitations, his assessment was the one relied upon by the administrative law judge. Clearly, he felt that the restricted range of light work was in accord with Dr. Apgar's opinion.

The second opinion plaintiff asserts should have been given controlling weight is from Dr. Kilkenny, her treating physician at Wayne Health Services. Though he has treated plaintiff for years, the only opinion he expressed about her ability to work is contained in a physical exam form he completed for the West Virginia Department of Health and Human Resources in furtherance of plaintiff's attempt to obtain a medical card. The only exam finding he documented on this form was "tender low back, midline." The diagnosis listed was back pain and osteoarthritis. Dr. Kilkenny concluded plaintiff could not work at her customary or any other occupation for an "unknown" time because she was "unable to sit or stand for prolonged periods."

The administrative law judge discussed this opinion and declined to give it controlling weight because the determination of disability is for the Commissioner to make[6] and because his opinion was not consistent with the remainder of the evidence. The opinion of a treating physician will be

---

[4]See, 20 C.F.R. § 416.967(b); SSR 83-10 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). By implication, sitting would be required only about two hours of the day.

[5]Id.

[6]20 C.F.R. § 416.927(e)(1).

given controlling weight only where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is "not inconsistent with the other substantial evidence" in the record.[7] Dr. Kilkenny's notation of tenderness in the lower back hardly makes his opinion "well-supported," and it is not consistent with the other evidence, such as the reports from Drs. Tao and Weinsweig. In fact, Dr. Kilkenny's reports during the relevant period[8] make only a few references to plaintiff's back condition, and there is no indication he actually examined her neck or back between May 29, 2002 and the most recent visit reflected in the record on March 16, 2005. In January 2004, Dr. Kilkenny indicated he was going to send plaintiff to pain management, but on March 31, 2004, after she reported she had seen a pain management specialist, Dr. Kilkenny noted "he has apparently not recommended any therapy." Even if Dr. Kilkenny's reasons for finding plaintiff could not work – an inability to sit or stand for prolonged periods – were consistent with the evidence, such limitations would not necessarily be preclusive of all work. The Court concludes, therefore, that the administrative law judge's findings relative to the weight to be accorded Dr. Kilkenny's opinion are reasonable in accord with the regulations and supported by substantial evidence.

Plaintiff's other contention is that the residual functional capacity assessed by the administrative law judge was not supported by the evidence. In particular, she points out that the

---

[7]20 C.F.R. § 416.927(d)(2).

[8]As noted, his treatment notes relate to plaintiff's back and neck conditions as far back as 1998; however, plaintiff worked until February 2002 and did not file for benefits until August 11, 2003. The regulations at 20 C.F.R. § 416.335 provide that a claimant cannot receive disability benefits prior to the month after he or she files an application and meets all other requirements.

administrative law judge found plaintiff had a severe left knee impairment but did not assess any standing or walking limitations.

The administrative law judge discussed this impairment but noted Dr. Tao did not impose any permanent restriction on plaintiff after her surgery. He noted plaintiff's knee was stable, neurovascularly intact and had full, painless passive range of motion. Only Dr. Apgar observed any abnormality of plaintiff's gait, and this was prior to her knee surgery. The administrative law judge also pointed out that plaintiff apparently did not complete her follow-up with Dr. Tao, nor did she seek an injection for the discomfort she reported. Given these factors, he deemed the restrictions on lifting/carrying and only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling to adequately account for any limitations she experienced relating to the knee. Taking account of these circumstances, the Court finds no merit to plaintiff's argument in this regard.

Plaintiff also argues her carpal tunnel syndrome should have been considered a severe impairment, citing to objective test results showing carpal tunnel syndrome and ulnar neuropathy, Dr. Apgar's opinion that she "may" have "some" difficulty with handling objects with the dominant hand, and her own testimony. The EMG/nerve conduction studies which revealed carpal tunnel syndrome are from November 1998. Plaintiff was treated for this condition with wrist splints and subsequently performed work which involved some degree of typing. Medical reports reflect no treatment for this condition during the period considered here, and, as noted, Dr. Apgar found no limitation on plaintiff's abilities to grasp, pinch and manipulate objects with either hand. Further, the credibility of plaintiff's testimony that she has no grip strength and cannot hold objects was

found to be "only fair at best." It is apparent, therefore, that plaintiff's argument in this regard also has no merit.

The Court finds the administrative law judge's discussion of plaintiff's impairments, their severity, the resultant work-related limitations, the weight he gave to various medical opinions, and plaintiff's credibility are all supported by substantial evidence. The Commissioner's decision must, therefore, be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: September 8, 2009

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE